**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Fort Lauderdale Division**

Case No. _____

ABS HEALTHCARE SERVICES, LLC, a
Florida limited liability company, and
HEALTH OPTION ONE, LLC, a Florida
limited liability company,

                     Plaintiffs,
vs.

MAXIM HEALTH INC., a California
corporation,

                     Defendants.
_____/

## COMPLAINT

Plaintiffs ABS Healthcare Services, LLC ("ABS") and Health Option One, LLC, doing business as Insurance Care Direct, (collectively, "ICD"), allege upon personal knowledge as to their own acts and status and upon information and belief as to all other matters as follows:

## THE PARTIES

1.      ICD is a family-owned business established in 2001, which has grown into one of the nation's largest health and life insurance agencies. ICD provides marketing and compliance support and access to products including, but not limited to, limited medical, short term medical, term life, final expense, accidental death, critical illness, dental and discount medical coverage and services such as telehealth.

2.      Maxim Health Inc. ("Maxim") is a California corporation. Maxim is an insurance agency and is in the business of selling limited benefit insurance plans.

1

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorney's fees.

4.     Maxim is subject to this Court's jurisdiction pursuant to Fla. Stat. § 48.193(1)(a)(1) because it operates, conducts, engages in, or carries on business or business venture in this state and pursuant to Fla. Stat. §48.193(1)(a)(2) because it committed tortious acts within this state.  Maxim has been engaging business which has been continuous and substantial business activity in the State of Florida.  Maxim has had sufficient minimum contacts with the State of Florida including having its agents travel to the State of Florida for business and engaging electronic and telephonic communications relating to business in the State of Florida.

5.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred within this District.

## FACTUAL ALLEGATIONS

6.     ICD enters into Florida agreements with agents, which authorize agents to market ICD plans to sell limited benefit insurance plans (the "Florida ICD Exclusive Agent Agreements"). These agreements are entered into in Florida for performance in Florida and elsewhere and are governed by Florida law.

7.     Pursuant to the Florida ICD Exclusive Agent Agreements, Agents are: (a) authorized to solicit customers only for insurance plans marketed and sold by ICD (the "ICD Plans"); (b) permitted to use ICD's confidential and trade secret information only in connection with the marketing and sale of ICD Plans; (c) prohibited from inducing ICD's customers or

prospective customers to discontinue doing business with ICD; and (d) prohibited from selling or offering to sell non-ICD Plans.

8.     The Florida ICD Exclusive Agent Agreement contains the following provisions: confidentiality; non-solicitation; exclusivity, and non-disclosure.

a)     Confidentiality: Agents agree to use ICD's "Confidential Information only for the purpose for which it was disclosed and only to carry out the provisions of this Agreement . . . not [to] disclose [ICD's] Confidential Information to third parties unless necessary to meet its obligations under this Agreement, and then only to a third party similarly bound by the same privacy standards and agreements . . . [to] continue to treat the other party's Confidential Information in this manner even after termination of this Agreement" (§ XII(C)).

b)     Non-Solicitation: Agents agree "not induce or attempt to induce any benefit providers, carriers, customers, employees, licensed agents, representatives, agencies of record and/or any agents of record to discontinue their association with ICD." (§  XIII).

c)     Exclusivity: Agents agree that "the relationship between ICD, its customers, benefit providers, carriers, agencies, and/or agents are unique and agrees not to contact those customers, benefit providers, carriers, agencies and/or agents for commercial purposes other than on behalf of ICD for the entire term of this Agreement and for a period of twenty-four months upon termination of the [sic] this Agreement." (§ XII(F)).

d)     Mutual Non-Disclosure: Agents agree they obtain Confidential Information "for the sole purpose of exploring, developing and conducting business [with ICD]." (Mutual Non-Disclosure Agreement § 2).

e)     All materials provided by ICD to Agents "shall be used exclusively in the performance of this Agreement and may not be used or distributed for any other purpose." (§X (J)).

f)      Confidential information includes ICD's: (i) customer information (§XII(A)); and (ii) business plans and processes, customer lists, products and intellectual property (§XII(B).

9.      Agents are compensated for selling benefit plans only on behalf of ICD.

10.     Maxim was formed in 2017 for the purpose of inducing, facilitating, profiting from and concealing the breach by Agents and others of their duties and obligations to ICD individually by directly competing with ICD in selling non-ICD products to customers, using and disclosing ICD's confidential information and trade secrets to illicitly compete with ICD, soliciting and inducing ICD's actual and prospective customers to not do business with ICD, and instead to do business with Maxim and others selling products of similar type to those that ICD markets.

11.     In inducing, facilitating, profiting from, and concealing the breach by Agents and others of their duties and obligations to ICD, and in soliciting and inducing ICD's actual and prospective customers to not do business with ICD, and instead to do business with Maxim and others selling products of similar type to those that ICD markets, including by using and disclosing ICD's confidential information and trade secrets to illicitly compete with ICD, Maxim acted in concert with, among others, Florida residents Andrew Shader, Corey Shader, and Andrew Beeman and two Florida Corporations, National Health Solutions Inc. and Kratos Investments LLC.

12.     In this suit, ICD seeks to recover damages resulting from Maxim's illegal activity that is depriving ICD of customers and revenue and harming its business.

## COUNT I:  TORTIOUS INTERFERENCE WITH AGENT AGREEMENT

13.     ICD incorporates the allegations set forth in Paragraphs 1 through 12.

14.     The Florida ICD Exclusive Agent Agreement is a valid and binding contract between ICD and its agents, and includes provisions requiring confidentiality, non-solicitation, and exclusivity.

15.     At all material times, Maxim was aware of the Florida ICD Exclusive Agent Agreement, including the confidentiality and non-compete provisions

16.     Maxim committed intentional acts designed to induce a breach of the contractual relationship between ICD and its Agents and others by soliciting and causing its Agents to breach their contractual and fiduciary obligations to ICD, including exclusivity, non-solicitation, and confidentiality provisions of the Florida ICD Exclusive Agent Agreement.

17.     Maxim's conduct in fact resulted in the breach of the Florida ICD Exclusive Agent Agreement when ICD's Agents violated the exclusivity, non-solicitation, and confidentiality provisions of the agreement by using ICD's confidential information to market and sell the products that ICD sells to ICD's current and potential customers.

18.     Maxim's interference was intentional and unjustified.

19.     ICD has been and continues to be damaged as a result of Maxim's tortious interference with the Florida ICD Exclusive Agent Agreement.

## COUNT II: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

20.     ICD incorporates the allegations set forth in Paragraphs 1 through 12.

21.     At all relevant times, ICD had an economic relationship with its Agents and others.

22.     ICD has economic relationships with individuals that were members of the ICD Plans as a result of ICD's marketing and related efforts.

23.     ICD generated and cultivated leads to prospective customers to market its plans for insurance products (the "leads").

24.     Through the acquisition and development of leads to customers, ICD has a protectable business relationship with consumers identified in leads, which constituted

identifiable prospective customers of ICD who could have participated in an ICD plan but for being offered a competitive product by Maxim. But for Maxim's conduct, there is a significant probability that these customers would have purchased insurance products from ICD, resulting in an economic benefit to Plaintiff.

      25.     ICD has legal rights under these existing and prospective business relationships.

      26.     At all material times, Defendant was aware of ICD's current and prospective business relationships.

      27.     Defendant interfered with these business relationships by inducing or otherwise causing existing prospective customers to not do business with ICD.

      28.     Defendant's actions were intentional and unjustified. ICD has been and continues to be damaged as a result of Defendant's tortious interference with its business and actual prospective customers.

### COUNT III: MISAPPROPRIATION OF TRADE SECRETS FL Stat. Ch. 688 AND THE DEFEND TRADE SECRET ACT 18 USC §1836

      29.     ICD incorporates the allegations set forth in Paragraphs 1 through 12.

      30.     Defendant has misappropriated trade secrets under the Florida Uniform Trade Secrets Act Chapter 688 and The Defend Trade Secrets Act, 18 U.S.C. 1836, et seq.

      31.     ICD's Agents agreed to use ICD's confidential information ("Confidential Information") "only for the purpose for which it was disclosed and only to carry out the provisions of this Agreement," and to continue to treat ICD's Confidential Information "in this manner even after termination of this Agreement." (§ XII(C)).

      32.     In order to allow ICD's Agents to perform their duties under the Florida ICD Exclusive Agent Agreement, ICD furnished them with trade secret information ("Trade Secrets").

      33.     The Trade Secret information included, but is not limited to, recruitment strategies, agency and agent on-boarding methods, proprietary business information, rating models, product specifications, product design, actuarial models, underwriting guidelines,

customer names, customer lists, proprietary prospect generation platform intellectual property, proprietary marketplace intellectual property, portals granting access to carrier products, third-party and association benefit products, market information, market share data, marketing plans, product design and pricing strategies, product or service ideas or plans access, ICD sub-agency introductions and sales meeting content, producer compensation plans (*e.g.*, commission structure and advances), introductions to third-party insurers vendors, introductions to insurers for insurer agreements and insurer appointments, licensing strategy and design, technical sales support for enrollment platforms, data, know-how, research, and any documents, reports, notes, analyses, compilations, studies, interpretations, copies, or other materials that contain or are based upon trade secrets.

34.     ICD's Agents agreed not to disclose the Trade Secret information to third parties without prior written consent of ICD and agreed not to use ICD's Confidential Information and Trade Secrets "to develop any product or service, which is the same as or similar to any product or service sold on behalf of ICD" and that he "shall not divulge in any manner whatsoever the methods ICD utilizes to anyone other than agent or agency of record." (§ XII(F). Maxim, through ICD's Agents and others, wrongfully accessed and utilized ICD's Trade Secrets.

35.     ICD's Agents also entered into a Mutual Non-Disclosure Agreement with ICD ("NDA") in which he agreed that he would use ICD's Confidential Information and Trade Secrets only in connection with the performance of the ICD Exclusive Agent Agreement and not for his own commercial gain in competition with ICD. (NDA ¶ 6).  Maxim, through ICD's Agents and others, wrongfully utilized ICD's Confidential Information and Trade Secrets.

36.     ICD's Agents acknowledged and agreed that use of ICD's Confidential Information other than as permitted under the ICD Exclusive Agent Agreement would cause ICD irreparable harm for which it would not have an adequate remedy at law, and such improper use of ICD's Confidential Information would entitle ICD to pursue injunctive relief and money damages. (NDA ¶ 7).

37.     ICD's Agents had access to ICD's Trade Secrets and provided that access to Maxim.

38.     The Trade Secrets were developed by ICD through substantial effort and expense.

39.     ICD derives significant economic value from the Trade Secrets, which are not generally known and not readily ascertainable by, other people who may be able to obtain economic value from their disclosure.

40.     ICD has taken reasonable steps to maintain the secrecy and confidentiality of the Trade Secrets, including through agreements that prohibit disclosure and unauthorized use of the Trade Secrets.

41.     Defendant knew of the existence of the Trade Secrets at all material times.

42.     Defendant has misappropriated the Trade Secrets by and through improper means by, among other things, by using the Trade Secrets to solicit and poach ICD's actual and prospective customers and entities having business relationships with ICD. Defendant knew, or had reason to know, the Trade Secrets were obtained by improper means.

43.     Defendant's misappropriation of the Trade Secrets has damaged (and continues to damage) ICD.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests the following relief:

1.     A jury trial for those issues so triable;

2.     An award of compensatory and punitive damages in an amount in excess of $75,000 to be proved at trial;

3.     Disgorgement of revenues, profits and unjust enrichment derived from Defendant's injurious conduct.

4.     All costs and expenses to which ICD is entitled, including reasonable attorneys' fees to the extent permitted by law;

5.     Prejudgment and post judgment interest;

6.      An injunction preventing Maxim, acting through its employees and/or agents, from using ICD's trade secrets; and

4.      Such other and further relief the Court deems appropriate.

### DEMAND FOR JURY TRIAL

ICD demands a trial by jury on all issues so triable.

Dated: July 17, 2020                              Respectfully submitted,

                                                  **BOIES SCHILLER FLEXNER LLP**


                                                  By: */s/ Sigrid McCawley*
                                                        Sigrid S. McCawley, Esq.
                                                        Fla. Bar No. 129305
                                                        Carlos M. Sires, Esq.
                                                        Fla. Bar No. 319333
                                                        401 East Las Olas Blvd., Suite 1200
                                                        Fort Lauderdale, Florida 33301
                                                        Telephone: (954) 356-0011
                                                        Facsimile: (954) 356-0022
                                                        Email: smccawley@bsfllp.com
                                                        Email: csires@bsfllp.com

                                                        James Fox Miller
                                                        Fla. Bar No. 95070
                                                        2435 Hollywood Boulevard
                                                        Hollywood, FL 33020
                                                        Telephone: (954) 924-0300
                                                        Facsimile:  (954) 924-0311
                                                        Email: jfmiller@bsfllp.com

                                                        *Attorneys for Plaintiffs*